UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PATRICK J. HANNON,               )
                                 )
              Plaintiff,         )
                                 )
v.                               )
                                 )
CITY OF NEWTON,                  )    CIVIL ACTION NO.
                                 )    11-10021-DPW
              Defendant,         )
                                 )
and                              )
                                 )
UNITED STATES OF AMERICA,        )
COMMONWEALTH OF MASSACHUSETTS,)
and RITA S. MANNING,             )
                                 )
              Intervenors.       )

MEMORANDUM AND ORDER
September 24, 2012

This case involves the disposition of the proceeds of an undercompensation action related to the eminent domain taking of property at 20 Rogers Street in Newton, Massachusetts, formerly owned by Plaintiff Patrick J. Hannon.  The United States and Rita S. Manning intervened in order to assert their separate interests in the proceeds.

On October 24, 2011, I issued a Memorandum and Order holding that the United States had discharged its lien on Hannon's property pursuant to 26 U.S.C. § 6325(b)(2)(A) and, in doing so, surrendered its priority claim to proceeds generated by litigation after the discharge.  Final judgment entered that day directing that the funds from the lawsuit be distributed first to Manning and then to the United States as an unsecured creditor.

The United States timely filed a Motion for Reconsideration of my October 24, 2011 Memorandum and Order.  Julie Foshay, a third party who had previously recorded a judgment against Hannon, thereafter moved to intervene.

## I.  BACKGROUND

<u>A.</u>  <u>Facts</u>

At various times from December 17, 2001 through October 15, 2005, Hannon and his wife were assessed income tax, penalties, and interest for the years 1999, 2000, and 2001 by a delegee of the Secretary of the Treasury.  Notices of Federal Tax Liens for the assessed liabilities were filed at the United States District Court in Boston at various times between January 24, 2003 and February 6, 2004, and at the Registry of Deeds for Southern Middlesex County at various times between February 8, 2003 and February 23, 2004.

On April 14, 2004, Julie Foshay recorded a writ of attachment of Hannon's "goods or estate" in Massachusetts in the amount of $1,553,730 at the Middlesex Registry of Deeds.

Rita Manning obtained a judgment against Hannon on March 17, 2005 in the Middlesex Superior Court in the amount of $103,333.33.  She obtained an execution for that amount against Hannon's "goods, chattles [and] land" on June 9, 2005, and she recorded that execution at the Middlesex County Registry of Deeds on June 28, 2005.

Approximately one year later, on June 6, 2006, Foshay recorded a second writ of attachment at the Middlesex Registry of Deeds increasing the amount of her attachment to $1,877,520.  On August 10, 2006, Foshay recorded a copy of a judgment she was awarded against Hannon for "$1,001,134 plus interest in the amount of $636,114 through and including March 20, 2006 plus interest from and after said date at the statutory rate (currently 12% or $329.14 per diem), and her costs of action."

At the time of these recordings, Hannon owned property at 20 Rogers Street in Newton, Massachusetts ("the Property").  On May 7, 2007, the City of Newton took the Property under the power of eminent domain and made a *pro tanto* payment of $2,300,000.  Three days beforehand, the Internal Revenue Service ("IRS") had issued a Certificate of Discharge for the Property pursuant to 26 U.S.C. § 6325(b)(2)(A).  The Certificate was recorded on July 17, 2007, and stated that the value of the interest of the United States in the Property was $57,214.55.  This amount was collected by the United States in exchange for the discharge.

B.   Procedural History

On November 10, 2008, Hannon filed this action in the Middlesex Superior Court against the City of Newton, alleging under-compensation for the taking of the Property.  On May 14, 2010, Manning moved to intervene and her motion was allowed on May 20, 2010.  On May 19, 2010, the IRS issued a Notice of Levy

3

to the City of Newton with respect to all property and rights to property belonging to Hannon.  Two months later, judgment entered for Hannon against the City of Newton for the sum of $420,000.00 with interest in the sum of $31,245.72 as well as the costs of the action.

On September 15, 2010, the City of Newton moved for leave to deposit with the court the damages awarded in the action in order to avoid further accrual of statutory interest.  The motion stated that

> the payee of the judgment is in dispute.  Several parties lay claim to the judgment.  In addition to the Plaintiff . . . Rita S. Manning filed a Motion to Intervene on May 14, 2010.  The United States Internal Revenue Services has also filed a Notice of Levy with the City.

The motion was allowed on September 23, 2010.  On October 4, 2010, the City of Newton deposited the amount due, plus interest, with the court.

On December 7, 2010, the United States moved to intervene and its motion was granted.  On December 22, 2010, the court ordered that $151,761.73 be paid out to Hannon's attorneys, leaving $299,483.99 to be distributed.  The United States removed the case to this court on January 6, 2011.

After Manning and the United States respectively filed cross-motions for summary judgment, I issued the October 24, 2011 Memorandum and Order denying the United States' motion

4

for summary judgment and granting Manning's cross-motion for summary judgment and judgment was entered accordingly.

In response, the United States filed its Motion for Reconsideration. While that motion was pending, Julie Foshay filed her Motion to Intervene as of right, which has been opposed by the United States.

## II.  MOTION FOR RECONSIDERATION

The United States filed a Motion for Reconsideration and to Alter or Amend Judgment under Federal Rule of Civil Procedure 59(e). The motion raises three arguments: (1) federal tax liens attach to Hannon's claim for under-compensation regardless of 26 U.S.C. § 6325(b); (2) the October 24, 2011 Memorandum and Order misapplied 26 U.S.C. § 6325(b)(3); and (3) the October 24, 2011 Memorandum and Order's reliance on *United States* v. *Holtzclaw*, Civil No. S-84-402 MLS, 1988 U.S. Dist. LEXIS 16355 (E.D. Cal. Dec. 12, 1988); *In re Miller*, 98 B.R. 110, 112 (N.D. Ga. 1989); and *Estate of Frazier* v. *Dist. Dir., I.R.S.*, No. 1:91-CV-1877-JTC, 1992 WL 472026 (N.D. Ga. Oct. 14, 1992) was misplaced. I find none of these arguments persuasive.

A.  Standard of Review

Although there is no formal rule of civil procedure that provides by terms for a motion for "reconsideration," Federal Rule of Civil Procedure 59(e) gives a party 28 days from the entry of judgment to move to alter or amend that judgment. Fed.

R. Civ. P. 59(e).  "Reconsideration under Rule 59 is proper in four circumstances: 1) if the initial ruling was based on an inadequate record; 2) if there has been a material change in controlling law; 3) if there is newly discovered evidence that bears on the question; or 4) if the earlier decision is clearly erroneous and would work a manifest injustice."  *In re iBasis, Inc. Derivative Litigation*, 551 F. Supp. 2d 122, 123 (D. Mass. 2008) (citing *Ellis* v. *United States*, 313 F.3d 636, 647–48 (1st Cir. 2002)).  However, "[s]uch problems rarely arise; therefore the motion for reconsideration should be equally rare."  *Reyes Canada* v. *Rey Hernandez*, 224 F.R.D. 46, 48 (D.P.R. 2004) (citing *Bank of Waunakee* v. *Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990)).

B.   The IRS Discharged its Liens With Respect to the Compensation for Hannon's Property

The United States contends that federal tax liens attached to Hannon's claim for undercompensation.  It presents four arguments in support of this proposition.

1.   *Discharge Was As To Realty Only*

First, the United States contends that "the discharge was of the realty only, for the purpose of giving the City clear title." Again, I disagree.  A discharge was not necessary to give the City of Newton clear title; the exercise of the power of eminent domain itself accomplished this goal.  When the government exercises its power of eminent domain, all liens on the property

6

are generally extinguished. *New England Cont'l Media, Inc.* v. *Town of Milton*, 588 N.E.2d 1382, 1384 (Mass. App. Ct. 1992). This is longstanding Massachusetts law: Chief Justice Holmes wrote in 1901 that "if there is such a thing as a new title known to the law, one founded upon a taking by the right of eminent domain is as clear an example as can be found." *Emery* v. *Boston Terminal Co.*, 59 N.E. 763, 765 (Mass. 1901). The United States's decision to discharge its lien on Hannon's property cannot be justified on the basis of the necessity to clear title.

    2.    *Discharge under § 6325(b)(2)(A)*

    Second, the United States contends that "[n]othing in § 6325 or the regulations states that the issuance of a certificate of discharge under § 6325(b)(2)(A), rather than § 6325(b)(3), overrides the general rule that federal tax liens apply to all of the taxpayer's property and rights to property." Again, I disagree. Both the statutory scheme of 26 U.S.C. § 6325, considered in its entirety, and the particular requirements of § 6325(b)(2)(A) indicate that a discharge pursuant to that section discharges any lien on the proceeds of the sale of the property at issue.[1]

---

[1]  I do not hold that 26 U.S.C. § 6325(b)(2)(A) "overrides" the general rule that federal tax liens apply to all of the taxpayer's property and rights to property. Instead, I hold that the United States, by discharging property pursuant to § 6325(b)(2)(A), *relinquished* its lien on the proceeds of the sale beyond the amount claimed by the Secretary in exchange for the discharge.

The structure of § 6325 as a whole indicates that a certificate of discharge under § 6325(b)(2)(A) discharges all interest in the proceeds from the sale of that property.  As I wrote in the October 24, 2011, Memorandum and Order:

> Congress provided the IRS with two options for discharging a lien on property without waiving the right of the United States to priority payment.  Under 26 U.S.C. § 6325(b)(3), the IRS discharges the property while expressly maintaining its right to the proceeds after the sale is complete.  Under 26 U.S.C. § 6325(b)(2)(A), the IRS calculates its interest and collects the value of that interest in exchange for a discharge of the property.

*Hannon* v. *City of Newton*, 820 F. Supp. 2d 254, 258 (D. Mass. 2011).  The juxtaposition of § 6235(b)(2)(A) and § 6235(b)(3) makes clear that, unlike a discharge pursuant to § 6235(b)(3), a discharge pursuant to § 6235(b)(2)(A) does not preserve the IRS's right to the proceeds of the sale.

Further, the language in § 6325(b)(2)(A) itself indicates that when the IRS discharges a lien pursuant to that subsection, it relinquishes its claim to the proceeds of the sale beyond the amount claimed by the Secretary.  As I noted in the October 24, 2011, Memorandum and Order:

> The IRS may only issue a discharge of the taxpayer's property pursuant to this subsection if the Secretary is paid "an amount determined by the Secretary, which shall not be less than the value, as determined by the Secretary, of the interest of the United States in the part to be so discharged."  26 U.S.C. § 6325(b)(2)(A). If the IRS could maintain its lien on the proceeds of a subsequent sale, it would be anomalous to require that the money accepted in exchange for the discharge *also* equal the value of that entire interest.  The clearest

rationale for this requirement is that Congress did not
anticipate that additional funds would be readily
accessible based on tax liens after a 26 U.S.C.
§ 6325(b)(2)(A) discharge, and therefore required that
the Secretary collect the value of the entire interest
of the United States in the property in exchange for
the Certificate of Discharge.

*Hannon*, 820 F. Supp. 2d at 258.

In its Motion for Reconsideration, the United States argues

that

[i]t is true that *if the IRS does receive* the full
value of its interest, there *should ordinarily* be no
basis to claim proceeds because receiving full value
means receiving the lesser of either full payment of
the tax liability or the full value of the taxpayer's
interest . . . . In the event that a taxpayer does have
a right to proceeds of property that has been
discharged from federal tax liens, and a tax liability
remains outstanding, however, those proceeds are
treated the same as any other property under § 6321 and
the federal tax liens attach to them, regardless of
whether that is due to an inaccurate estimate of value
or fraud or anything else.

(emphases in original).  I find this argument inconsistent with

the statute.

There is no exception in the statute stating that the IRS

may issue a discharge pursuant to § 6325(b)(2)(A) for an amount

*less* than the value of the interest of the United States in the

property to be discharged where the IRS anticipates additional

proceeds may accrue and is consequently unsure of the value of

its interest.  The language of the requirement is straightforward

when it provides that the IRS may issue a discharge "*if* . . .

there is paid over to the Secretary" a payment "which *shall not*

9

be less than the value, as determined by the Secretary, of the interest of the United States in the part to be so discharged." 26 U.S.C. § 6325(b)(2)(A) (emphases added).  Where the IRS is unsure of the value of the property or of the lien, it would be prudent, if it is possible to do so, to discharge the property pursuant to § 6325(b)(3) so that "the proceeds of [the] sale [will] be held, as a fund subject to the liens and claims in the United States, in the same manner and with the same priority as such liens and claims had with respect to the discharged property."  Here, the IRS did not use subsection (b)(3), and is left with the consequences of its decision to choose a statutory provision that fully discharged its lien on the proceeds of the sale.

     *3.   In re Levine*

     The United States contends that *In re Levine*, No. H. 4564, 67-2 U.S. Tax Cas. (CCH) P9479, 1967 U.S. Dist. LEXIS 11483 (D. Conn. May 1, 1967), supports the proposition that a discharge pursuant to § 6325(b)(2)(A) does not discharge the lien with respect to the proceeds of the sale.  *In re Levine* states:

> The discharge of lien was intended only to clear the
> record title of the real estate so that the trustee
> could dispose of his interest.  By its terms it saved
> and preserved all of its lien rights as to all other
> property and that would by operation of law include the
> cash proceeds of the sale by the trustee.

*Id.* at *3-4.  The United States argues that I should follow *In re Levine*'s lead and hold that the IRS preserved its lien rights

with respect to compensation for the Hannon property even after discharge.

As a preliminary matter, I note that it is not clear from the opinion in *In re Levine* whether the discharge in that case was issued pursuant to § 6325(b)(2)(A), rather than § 6325(b)(3). Assuming for the sake of argument that it was, I nonetheless find *In re Levine* unpersuasive. The *In re Levine* Court assumed, essentially as a matter of *ipse dixit*, that the discharge did not affect the right of the United States to the proceeds of the sale. The *In re Levine* Court did not consider the statutory structure of § 6325 or the limitation in subsection (b)(2)(A) that a discharge may be issued only if a payment is made for not less than the value of the United States's interest in the property. The analysis of *In re Levine* is less than complete and it does not cause me to reconsider my decision.

4. *Regulations*

Finally, the United States cites 26 C.F.R. § 301.6325-1(f)(3), which states that:

> any lien for Federal taxes attaches to any property
> with respect to which a certificate of discharge has
> been issued if the person liable for the tax reacquires
> the property after the certificate has been issued.
> Thus, if property subject to a Federal tax lien is
> discharged therefrom and is later reacquired by the
> delinquent taxpayer at a time when the lien is still in
> existence, the tax lien attaches to the reacquired
> property and is enforceable against it as in the case
> of after-acquired property generally.

11

I rejected the applicability of this regulation in my October 24,
2011, Memorandum and Order, noting that "Hannon did not sell and
then reacquire the property as the regulation contemplates" and
that "[c]laiming that the final payment made by the City of
Newton was part of an 'acquisition' does not obscure its true
identity as damages compensating the taxpayer for the earlier
taking." *Hannon*, 820 F. Supp. 2d at 260.  The United States
raises no compelling reason to reconsider this argument now.

C.   Application of § 6325(b)(3)

     The United States contends that the October 24, 2011,
Memorandum and Order misapplies § 6325(b)(3).  The United States
presents a three-pronged argument, contending that: (1) the IRS
could not have unilaterally invoked § 6325(b)(3) in this case;
(2) § 6325(b)(3) does not apply to the transfer of property
pursuant to the exercise of the power of eminent domain because
such a transfer is not a "sale"; and (3) Congress enacted
§ 6325(b)(3) in order to facilitate property sales where the
status of a federal tax lien is disputed, which was not the case
with respect to the liens on Hannon's property.

     The United States misapprehends the basis of my holding.
Section 6325(b)(3) was important for the purposes of my analysis
because its juxtaposition with § 6325(b)(2)(A) demonstrates that
a discharge pursuant to the latter subsection discharges the
IRS's lien on the proceeds of the sale of the property at issue.

I did not reach whether a discharge pursuant to § 6325(b)(3) would have been a feasible option for the IRS here (like the United States, I doubt that to be the case) because that was not the question presented.[2]  The question presented related to the effect of a § 6325(b)(2)(A) discharge; § 6325(b)(3) was only relevant because of its comparative role in the interpretation of § 6325(b)(2)(A).

The United States argues that because a § 6325(b)(3) discharge was not a feasible option with respect to the Hannon property, the IRS had no choice but to discharge the property pursuant to § 6325(b)(2)(A) in order to enable the transfer of the property and ensure that the United States would be paid from the resulting proceeds.  This argument exposes the futility of

---

[2]  To the extent that the introduction to the October 24, 2011, Memorandum and Order might be read to imply that somehow only a § 6325(b)(3) discharge would have been appropriate, the language was infelicitously chosen.  The Memorandum and Order stated that I would "grant summary judgment to Rita Manning and deny it to the United States because the United States chose to discharge its lien on Hannon's property pursuant to 26 U.S.C. § 6325(b)(2)(A) rather than 26 U.S.C. § 6325(b)(3) and thereby surrendered its priority claim to proceeds generated by litigation after the discharge." *Hannon* v. *City of Newton*, 820 F. Supp. 2d 254, 254-55 (D. Mass. 2011).  A more nuanced explanation for my ruling would have stated that I granted summary judgment to Manning and denied it to the United States because the United States chose to discharge its lien on Hannon's property pursuant to § 6325(b)(2) rather than discharging it pursuant to § 6325(b)(3), if possible, or issuing no discharge and collecting from the proceeds of the damages arising out of an eminent domain taking.  In any event, by issuing a discharge pursuant to § 6325(b)(2)(A), the United States surrendered its priority claim to proceeds generated by litigation after the discharge.

the United States's focus on the applicability of § 6325(b)(3)
instead of on the import of that subsection for the
interpretation of § 6325(b)(2)(A).  The United States was not
faced with a dichotomous choice between a discharge pursuant to
§ 6325(b)(2)(A) and a discharge pursuant to § 6325(b)(3).  The
United States had a third option: it could have *done nothing*.

As I discussed in the October 24, 2011, Memorandum and
Order, proceeds received as damages arising out of an eminent
domain taking are "to be regarded as capital substituted, by act
of law, in the place of the land taken." *Gibson* v. *Cooke*, 42
Mass. (1 Met.) 75, 76 (1840).  "[C]ompensation paid for land
taken by the exercise of the power of eminent domain in equity
represents the land and is subject to all the rights of persons
who had rights in the land . . . ." *Cornell-Andrews Smelting Co.*
v. *Boston & Providence R.R. Corp.*, 95 N.E. 887, 890 (Mass. 1911).
Faced with the imminent taking of Hannon's property by the City
of Newton, the United States did not need to issue a discharge of
its lien at all.  It could have simply waited and collected on
its lien from the compensation paid for the land.  As I wrote in
the October 24, 2011, Memorandum and Order:

> The United States made a deliberate, if improvident,
> choice to liquidate its priority interest in the Hannon
> property through a § 6325(b)(2)(A) discharge in the
> face of an eminent domain taking.  In doing so it
> secured immediate payment from the *pro tanto* payment.
> It gave up for this immediacy the further--but delayed-
> -opportunity for additional compensation from a land
> damage action.  Having made its choice, it may not

14

return to revive a preferred interest in proceeds from
the litigation.

*Hannon*, 820 F. Supp. 2d at 260-61.

D.   Persuasive Authorities

In the October 24, 2011, Memorandum and Order, I stated that
I found the reasoning of *Frazier*, *Miller*, and *Holtzclaw* to be
persuasive.  Each of these opinions noted the distinction between
§ 6325(b)(2)(A) and§ 6325(b)(3) and used the juxtaposition of
these two subsections as a means of interpreting § 6325(b)(2)(A).
The United States argues that my reliance on the three cases was
unwarranted.

First, the United States attempts to distinguish the three
opinions.  It states that "two of the three are unpublished, the
most recent is from 1992, and none is from a court in this
circuit."[3]  It argues that the facts of the three cases are
distinguishable from the facts of the case before me now and that
the language with respect to § 6325 in each of the three cases
was mere dicta.

_____

[3]  The United States objects to my use of *United States* v.
*Holtzclaw*, Civil No. S-84-402 MLS, 1988 U.S. Dist. LEXIS 16355
(E.D. Cal. Dec. 12, 1988); *In re Miller*, 98 B.R. 110, 112 (N.D.
Ga. 1989); and *Estate of Frazier* v. *Dist. Dir., I.R.S.*, No. 1:91-
CV-1877-JTC, 1992 WL 472026 (N.D. Ga. Oct. 14, 1992) on these
bases.  There is a measure of hypocritical dissembling in this
objection.  I note that the sole case the United States cites in
support of its interpretation of § 6325(b)(2)(A), *In re Levine*,
No. H. 4564, 67-2 U.S. Tax Cas. (CCH) P9479, 1967 U.S. Dist.
LEXIS 11483 (D. Conn. May 1, 1967), is also a decision
unpublished in F. Supp. that was issued well before 1992 by a
court outside of this circuit.

I find none of these distinctions relevant for my analysis
of § 6325(b)(2)(A).  The cited opinions provided persuasive
reasoning regarding how to interpret § 6325(b)(2)(A) in light of
§ 6325(b)(3).  Their reasoning was not fact-bound and certainly
was not diminished in persuasiveness by the date or publication
status[4] of the opinion.  That the facts were different, that the
analysis was dicta, and that the cases are not binding authority,
are not factors that change the compelling nature of the
statutory analysis.

Second, the United States argues that the three opinions
were wrongly decided because a certificate of discharge pursuant
to § 6325(b)(2) "discharges the specified realty from the federal
tax liens, nothing more."[5]  The United States provides no case
law, statute, or regulation in support of this interpretation of

---

[4] I have indicated elsewhere my view that lack of book
publication of a District Court opinion is not a compelling
reason to treat the reasoning of such an opinion with less
consideration than an opinion submitted for publication to West's
Federal Supplement series of reports.  *Vertex Surgical, Inc.* v.
*Paradigm Biodevices, Inc.*, 648 F.Supp.2d 226, 233-36 (D. Mass.
2009).

[5]  The United States also argues that *Holtzclaw* was wrong because
"[s]ection 6325(b)(3) is plainly not the exclusive basis upon
which the IRS may claim proceeds of a sale of property."  It is
not clear to me that *Holtzclaw* held otherwise, but regardless I
need not resolve that peripheral issue here.  It is not necessary
to determine the dimensions of the entire universe of ways in
which the IRS might claim the proceeds of a sale of property in
order to find the analysis in *Holtzclaw* persuasive with respect
to the import of § 6325(b)(3) for other discharges of property
pursuant to § 6325.

§ 6325(b)(2).  For the reasons discussed above, *supra*, I disagree.  The United States chose to discharge its tax liens pursuant to § 6325(b)(2), and in doing so it relinquished its priority claim to any proceeds generated by land damage litigation after the discharge.

Because the United States has failed to show that my October 24, 2011 Memorandum and Order was "clearly erroneous and would work a manifest injustice," *In re iBasis, Inc. Derivative Litigation*, 551 F. Supp. 2d at 123, I will deny its Motion for Reconsideration and to Alter or Amend Judgment.

### III.  MOTION TO INTERVENE

Foshay moves to intervene as of right pursuant to Federal Rule of Civil Procedure 24(a)(2).  The Rule provides that "[o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a)(2).  By its plain terms, then, Rule 24 requires that a would-be intervenor show that (1) its motion is timely, (2) it has an interest in the property at the foundation of the action, (3) the disposition of the action threatens to impair the would-be intervenor's ability to protect its interest, and (4)

none of the existing parties adequately represent the would-be intervenor's interest. *Ungar* v. *Arafat*, 634 F.3d 46, 50 (1st Cir. 2011). "Each of these requirements must be fulfilled; failure to satisfy any one of them defeats intervention as of right." *Id.* at 51.

It is undisputed that Foshay had an interest relating to the property that forms the foundation of this case and that property interests are at the heartland of Fed. R. Civ. P. 24(a)'s concerns. *See Diaz* v. *S. Drilling Corp.*, 427 F.2d 1118, 1124 (5th Cir. 1970) ("Interests in property are the most elementary type of right that Rule 24(a) is designed to protect."). It is also undisputed that no existing party adequately represented Foshay's interest. Neither the United States nor Manning had an interest in enforcing Foshay's right (if any) to the litigation proceeds. I find that the writs of attachment and judgment recorded at the Middlesex Registry of Deeds and the circumstances of this case demonstrate that the second and fourth requirements of Rule 24(a)(2) are met by Foshay.

The United States, however, disputes whether the first and third requirements are met. It contends that the disposition of this action does not threaten to impede or impair Foshay's ability to protect her interest and that her motion to intervene is untimely.

A.   Impairment of Foshay's Ability to Protect Her Interest

The United States opposes Foshay's claim that the disposition of this action threatens to impede or impair her ability to protect her interest.  The United States does so on two grounds.

First, the United States argues that Foshay's motion is futile because her interest is junior to the federal tax liens on the damages award.  For this argument, the United States depends upon the contentions unsuccessfully made in its Motion for Summary Judgment and Motion for Reconsideration, both of which I have denied.  For the reasons developed in my October 24, 2011, Memorandum and Order granting summary judgment to Manning and restated above in denying the government's Motion for Reconsideration, I find the contentions relied upon by the government to be unconvincing as to Foshay as well.

Second, the United States argues that Foshay "admits that the federal tax liens are senior to her purported attachment against Hannon's property interest in the under-compensation award."  The United States mischaracterizes Foshay's position. In the course of justifying the delay in filing her motion to intervene, Foshay stated that the discharge issued by the IRS "to Foshay in good faith appeared to be a discharge of the IRS's liens on the real estate only, while retaining a lien on the proceeds of the taking."  This was not an admission with respect

19

to the legal significance of the certificate of discharge--which, in any event, is for the Court to determine--but instead an explanation of why Foshay did not seek to intervene earlier. Apparently, Foshay at one point mistakenly believed that the IRS maintained its priority with respect to the proceeds of Hannon's land damages action, but this error does not undermine her claim that the disposition of this action threatened to impede her ability to protect her interest in those proceeds.

Foshay has demonstrated that she has an interest in the proceeds of the land damages action.  If judgment is entered ordering payment of the proceeds to Manning and the United States, Foshay will not have been paid and her interest in that sum will have been impeded.  I therefore find that Foshay has demonstrated that the third requirement of Rule 24(a)(2) is met.

B.   Timeliness

Foshay contends that her motion to intervene was timely because (1) she was ignorant of the developments in this case until shortly before filing the motion (not having followed the case's progress since mid-2010) and (2) until her counsel read my October 24, 2011, Memorandum and Order, she believed that the United States's claim to the litigation proceeds had priority over her own claim.  Foshay explains that when she learned of the October 24, 2011, Memorandum and Order, she promptly moved to intervene.  For its part, the United States contends that

20

Foshay's motion was untimely because it was not filed within nine months of the May 19, 2010, Notice of Levy issued to the City of Newton.  I find Foshay's justification for her delay in seeking to intervene in this Court to be plausible, if barely sufficient as an explanation (and as such unopposed by the United States). Consequently, I turn to the determinative question whether her intervention is barred by the statute of limitations governing 26 U.S.C. § 7426(a)(1).

Pursuant to § 7426(a)(1),

[i]f a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States. Such action may be brought without regard to whether such property has been surrendered to or sold by the Secretary.

A wrongful levy action pursuant to § 7426(a)(1) is the exclusive remedy available to third parties who assert an interest in the levied property.  *Miller* v. *Tony & Susan Alamo Foundation*, 134 F.3d 910, 916-17 (8th Cir. 1998); *Dahn* v. *United States*, 127 F.3d 1249, 1253 (10th Cir. 1997); *Fid. & Deposit Co. of Md.* v. *City of Adelanto*, 87 F.3d 334, 335 (9th Cir. 1996); *Kirk* v. *United States*, 1996 WL 90560, at *1, 961 F.2d 211, 211  (Table) (4th Cir. 1992); *Williams* v. *United States*, 947 F.2d 37, 39 (2d Cir. 1991); *Trust Co. of Columbus* v. *United States*, 735 F.2d 447, 448 (11th Cir. 1984); *United Sand & Gravel Contractors, Inc.* v.

21

*United States*, 624 F.3d 733, 739 (5th Cir. 1980). *See also Markham* v. *Fay*, 74 F.3d 1347, 1354 (1st Cir. 1996) (stating in dicta that "[t]hird parties are limited to [the] remedy [of a suit for wrongful levy under 26 U.S.C. § 7426(a)(1)] . . . when the government proceeds by levy . . . .").

With one exception not applicable here, "no suit or proceeding under section 7426 shall be begun after the expiration of 9 months from the date of the levy or agreement giving rise to such action." 26 U.S.C. § 6532(c)(1). *See EC Term of Years Trust* v. *United States*, 550 U.S. 429, 431 (2007) (applying the statute of limitations). After the expiration of the nine-month limitations period, "the government ha[s] not waived its sovereign immunity, thus precluding suit." *EC Term of Years Trust* v. *United States*, 434 F.3d 807, 808 n.3 (5th Cir. 2006), *aff'd*, 550 U.S. 429 (2007). "[T]he failure to file a timely wrongful levy claim prior to the expiration of the time limitation in section 6532(c) deprives the district court of subject matter jurisdiction." *Becton Dickinson and Co.* v. *Wolckenhauer*, 315 F.3d 340, 353 (3d Cir. 2000). Over nine months passed after the government issued its notice of levy before Foshay sought to intervene in this case. Consequently, the limitations period has expired and this Court does not have subject matter jurisdiction to entertain Foshay's claim to the levied property.

Foshay contends that she does not assert her claim pursuant to § 7426(a)(1) and that as a result her claim is remediable. She offers two arguments in support of this proposition. First, she argues that the levy did not apply to the proceeds in which she asserts an interest. Second, she argues that her suit is "an action in the nature of interpleader" and is subject to a longer statute of limitations than the nine-month limitation imposed by § 6532(c)(1) on wrongful levy actions. I find neither argument compelling.

    1.   *Extent of the Levy*

Foshay's first argument is based on the language in the notice of levy. The government's notice described the levy as applying to the amounts that the City of Newton was "obligated to pay" Hannon and to "property belonging" to him. Foshay contends that the levy therefore applied only to the property, if any, remaining after satisfying the extant judgment liens. She argues that this interpretation of the notice conforms to the requirements of the statute governing the obligation to surrender levied property, which excepts from the duty to surrender property that is "subject to an attachment or execution under any judicial process." 26 U.S.C. § 6332(a).

Foshay's argument fundamentally misconstrues the workings of an IRS levy. The litigation damages were "property belonging" to Hannon. Nothing in the language of the notice of levy excepted

the portions of the proceeds on which third parties had placed a lien or attachment.  After the property was levied, those third parties had a nine month period in which to initiate a wrongful levy action and press their claims.  This is the general nature of an IRS levy:

> The administrative levy has been aptly described as a "provisional remedy."  In contrast to the lien-foreclosure suit, the levy does not determine whether the Government's rights to the seized property are superior to those of other claimants; it, however, does protect the Government against diversion or loss while such claims are being resolved.  The underlying principle justifying the administrative levy is the need of the government promptly to secure its revenues.

*United States* v. *Nat'l Bank of Commerce*, 472 U.S. 713, 721 (1985) (internal citation and quotations marks omitted).  The IRS levied upon all of the property belonging to Hannon in the hands of the City of Newton.  The existence of liens senior to those of the government gave rise not to a limitation on the levy, but instead to grounds for suit pursuant to § 7426(a)(1).

Section 6332(a) does not bolster Foshay's argument.  That statute imposes an obligation to surrender property "subject to levy" to the government.  It excepts from this obligation property that is "subject to an attachment or execution under any judicial process."  26 U.S.C. § 6332(a).  The exception is from the duty to surrender, not from the categorization of the property as "subject to levy."  The exception is crucial because third parties are liable for costs, interest, and "a penalty

equal to 50 percent of the amount recoverable" if they fail to surrender the property as required.  26 U.S.C. § 6332(d).  Under the exception, the City of Newton is not subject to those liabilities for its failure to surrender the proceeds to the government "upon demand of the Secretary."  26 U.S.C. § 6332(a). The exception, however, does not purport to govern the extent of the levy itself, and Foshay cites no case law in support of this strained reading of § 6332(a).

Foshay does cite two cases in support of her contentions with respect to the limited extent of the levy.  I find neither of these cases to be a convincing basis for her argument.

First, Foshay cites *Dannenberg* v. *Leopold & Co.*, 188 Misc. 250, 65 N.Y.S.2d 549 (N.Y. City Ct. 1946).  The *Dannenberg* Court held that because the property was subject to attachment, "when the government made its levy there was nothing for it to levy upon as, for all practical purposes, the fund had then already been legally appropriated to the use of this judgment creditor." *Dannenberg*, 188 Misc. at 251-52.  Foshay contends that *Dannenberg* provides persuasive reasoning in support of the argument that the property that she claims here was not subject to the IRS's levy.

I disagree.  *Dannenberg* was decided by the New York City Court in 1946 and significantly predated the Supreme Court's 1985 decision in *United States* v. *Nat'l Bank of Commerce*, which described an IRS levy as operating in the opposite way: the levy

is a provisional remedy and the seniority of other liens is worked out after the fact.  *See Nat'l Bank of Commerce*, 472 U.S. at 721.  Indeed, *Dannenberg* predated § 7426(a)(1) itself by twenty years.  *See* S. Rep. No. 1708, 89th Cong., 2d Sess., 30 (1966).  *See also EC Term of Years Trust*, 550 U.S. at 431 ("the Federal Tax Lien Act of 1966 added § 7426(a)(1).").  *Dannenberg* is not compelling with respect to the interpretation of a statute that did not yet exist at the time it was decided.  In light of the later, and contrary, development of the law, I conclude *Dannenberg* is not helpful here.

Second, Foshay cites *United States* v. *Fontana*, 528 F. Supp. 137 (S.D.N.Y. 1981).  The *Fontana* Court rejected a jurisdictional challenge to a dispute over the priority of a government lien, where the property at issue in the dispute remained in the hands of a third party at the time of litigation.  The government argued that the remedy under § 7426(a)(1) was exclusive and that the nine-month statute of limitations had expired.  The *Fontana* Court was not convinced, stating that "[t]he jurisdictional issue is simply resolved by the recognition that Great Lakes is not attempting to sue the United States . . . . When the property is in the hands of a nongovernmental party, other remedies may be available."  *Fontana*, 528 F. Supp. at 140.

*Fontana*, like *Dannenberg*, was decided before the Supreme Court's decision in *United States* v. *Nat'l Bank of Commerce.*

There, the Supreme Court stated that the notice of levy "gives the IRS the right to all property levied upon and creates a custodial relationship between the person holding the property and the IRS so that the property comes into the constructive possession of the Government." *Nat'l Bank of Commerce*, 472 U.S. at 720 (internal citation omitted).  Although the litigation proceeds here are in the hands of another party (now, this Court), they are in the constructive possession of the government until final judgment enters.  Consequently, a suit claiming the proceeds *is* a claim against the United States, regardless of whether the United States currently possesses the litigation proceeds itself.  *See Fid. & Deposit Co. of Md.*, 87 F.3d at 334-335 (holding that § 7426(a)(1) was the exclusive vehicle for plaintiff's claim to property subject to both a government levy and plaintiff lien, but physically possessed by a third party).  In light of *United States* v. *Nat'l Bank of Commerce*, I find *Fontana* to be unpersuasive as well.

Neither the case law cited nor the statutory interpretation offered by Foshay is a compelling basis for disregarding the exclusive remedy of § 7624(a)(1) and the fact that its limitations period has expired.  The notice of levy applied to *all* property owed by the City of Newton to Hannon, and Foshay's sole method of challenging that levy is no longer available to her.  I consequently reject Foley's first argument.

27

2.   *Interpleader*

Foshay's second argument is that she "seeks merely to participate in a sorting out of the proper order among competing property claims to the fund on deposit in court, an action in the nature of interpleader, not involving wrongful levy, and not governed by the nine-month statute [of limitations] applicable to wrongful levy actions."  In support of this argument, Foshay cites *Sandclay Trucking, Inc.* v. *Free Piping, Inc.*, 1996 WL 511673 (M.D. Fla. June 24, 1996), and *Estate of Johnson*, 836 F.2d 940 (5th Cir. 1988).  I find *Sandclay Trucking* unconvincing and *Estate of Johnson* inapposite.

The plaintiff in *Sandclay Trucking* initiated a suit "in the nature of interpleader" pursuant to 28 U.S.C. § 2410(a)(5) to determine the ownership of property regarding which the IRS had served a notice of levy and the plaintiff had obtained a writ of garnishment.  The government argued that § 7426(a)(1) provided the plaintiff's sole remedy and that the limitations period governing that statute had expired.  The *Sandclay Trucking* Court observed that "even courts that have not permitted actions under section 2410 questioning the validity of the underlying tax assessment have permitted suits where the third party disputes only the priority of the IRS lien and not its legitimacy." *Sandclay Trucking*, 1996 WL 511673, at *2.  In support of this

observation, the *Sandclay Trucking* Court cited *Estate of Johnson* and *Harrell* v. *United States*, 13 F.3d 232 (7th Cir. 1993). On the basis of these cases, the court "reject[ed] the IRS's statute of limitations argument." *Sandclay Trucking,* 1996 WL 511673 at *3.   I find *Sandclay Trucking* unconvincing because the two cases cited in the decision are inapposite.

In *Estate of Johnson*, the IRS placed a lien on Johnson's assets and seized them pursuant to 26 U.S.C. § 6861(a).   The executor of Johnson's estate subsequently brought a quiet title action with respect to the property. *Estate of Johnson*, 836 F.2d at 941-942.   The decision did not mention a levy and consequently did not consider the exclusivity of § 7426(a)(1) in the context of a levy. *Estate of Johnson* did not address the facts facing the *Sandclay Trucking* Court and did not address the facts with which I am presented today.

In *Harrell*, a taxpayer brought a quiet title suit pursuant to 28 U.S.C. § 2410(a) to challenge the government's levy of his wages. *Harrell*, 13 F.3d at 233.   The Seventh Circuit allowed the taxpayer's suit, noting that "the sorting out of competing property claims . . . is just the task for which the quiet-title act was designed." *Id.* at 234.   However, *Harrell* involved a suit brought by the taxpayer against whom the tax was assessed, whereas § 7426 governs suits brought by any person "*other than the person against whom is assessed the tax out of which such*

29

levy arose . . . ." (emphasis added).  Therefore, the Seventh Circuit had no occasion to consider § 7426 or the exclusive remedy that it provides when it is applicable.  *Harrell* is consequently inapposite with respect to both *Sandclay Trucking* and the case before me today.

Unlike *Sandclay Trucking*, courts have generally found that suits pursuant to § 2410(a) are impermissible where a remedy is available pursuant to § 7426(a)(1).  They have held that § 7426(a)(1) provides the exclusive remedy for a third party challenging the government's levy of property in which the third party has an interest.  *See Fid. & Deposit Co. of Md.*, 87 F.3d at 335; *United Sand & Gravel Contractors, Inc.,* 624 F.3d at 739; *Am. Nat. Bank & Trust Co.* v. *Thomas*, 680 N.E.2d 480, 482-83 (Ill. Ct. App. 1997).

I similarly find that where the plaintiff could sue for wrongful levy pursuant to § 7426(a)(1), allowing suits styled as "quiet title" actions pursuant to § 2410(a)(1) or actions "in the nature of interpleader" pursuant to § 2410(a)(5) would undermine the nine-month statute of limitations that Congress "thought essential to the Government's tax collection."  *EC Term of Years Trust*, 550 U.S. at 434.  I "simply cannot reconcile the 9-month limitations period for a wrongful levy claim under § 7426(a)(1) with the notion that the same challenge would be open under [28 U.S.C. § 2410(a)] for up to [six] years."  *Id.* at 435.  I

30

therefore hold that § 7426(a)(1) provides the exclusive remedy available to Foshay, and I consequently reject Foshay's second argument.

In the final analysis, Foshay has not demonstrated that she has any claim against the government.  While she has an interest in the proceeds, she may not pursue it because the limitations period has passed for the exclusive remedy available to her.  No purpose would be served by allowing Foshay to intervene when there is no reason to believe that considering and deciding her claim "in the normal course" would lead to anything other than dismissal of that claim for the reasons discussed above.  In short, her effort to intervene is futile.

### IV.  CONCLUSION

For the reasons set forth above, I (1) DENY the United States' Motion for Reconsideration (Dkt. No. 20), and (2) DENY Foshay's Motion to Intervene (Dkt. No. 22).

*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE