UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
PATRICK J. HANNON,             )
                               )
              Plaintiff,       )
                               )
                               )    CIVIL ACTION NO.
         v.                    )    11-10021-DPW
                               )
CITY OF NEWTON,                )
                               )
              Defendant.       )
-------------------------------)
                               )
                               )
UNITED STATES OF AMERICA and   )
JOSEPH BALDIGA, CHAPTER 7      )
TRUSTEE OF THE BANKRUPTCY      )
ESTATE OF PATRICK J. HANNON    )
AND ELIZABETH B. HANNON,       )
                               )
              Intervenors.     )
```

MEMORANDUM AND ORDER
May 11, 2018

In July of 2010, Patrick Hannon won a state court judgment against the City of Newton for underpayment in an eminent domain case.  Various of his creditors, however, asserted claims — arising from liens they held on the underlying property — over the proceeds of the judgment.

While the lien claims were under consideration in this Court, Hannon petitioned for bankruptcy.  Meanwhile, unaware of the pending bankruptcy, I awarded judgment to a creditor, Rita S. Manning, who had obtained a judgment against Hannon.  On

appeal, the United States Court of Appeals for the First Circuit reversed and determined that the United States was entitled to the entirety of the proceeds due to its tax lien.  *Hannon* v. *City of Newton*, 744 F.3d 759 (1st Cir. 2014).

When the case returned to me on remand, the bankruptcy Trustee pressed the question whether the judgment proceeds should be distributed directly to the United States as the senior creditor or to the bankruptcy Trustee to then distribute as part of his administration of the bankruptcy estate.  The bankruptcy judge in a decision affirmed by the First Circuit on appeal, *In re Hannon*, 839 F.3d 63 (1st Cir. 2016), has declined to permit a bankruptcy discharge.  The funds marshalled by the Trustee will be distributed pursuant to a liquidation under Chapter 7.

## I. BACKGROUND

### A. *Factual Background*

In early 2007, the City of Newton, Massachusetts sought to take a parcel of Hannon's land through eminent domain.  Multiple creditors (including the United States and Rita S. Manning), held liens against this property prior to the eminent domain proceedings.  The United States had a tax lien for over $7 million dollars, by far the largest of the liens on the property.

2

The City of Newton authorized $2.3 million for the taking of the property.  However, before it could do so, it needed the federal government to relinquish its claim on the property resulting from the tax lien.  The United States agreed to relinquish its claim and filed a Certificate of Discharge, discharging its lien over the property.  The United States ultimately received $57,214.55, the amount remaining from the eminent domain money after payment to the mortgagee of the property, a creditor with a more senior claim to the funds.

On November 10, 2008, Hannon commenced proceedings against the City of Newton in Massachusetts state court claiming that the amount paid by the City was not just compensation for the value of the land.  The Commonwealth of Massachusetts, a tax creditor, and Rita S. Manning, a junior creditor, intervened in the suit asserting priority to receive any judgment.  The IRS did not intervene at that time, but issued a Notice of Levy to the City of Newton attaching Hannon's property.  On July 6, 2010, a jury found that Hannon had been undercompensated, and awarded him an additional $420,000.  Instead of paying Hannon directly, the City of Newton deposited the funds in a Massachusetts Superior Court account, pending determination of what party or parties had a claim to the funds.  The Superior Court then undertook to determine which parties should receive a distribution.

In December 2010, the Superior Court ordered that Hannon's attorneys receive $151,761.74 of the judgment, leaving $299,483.99 of the proceeds to be distributed to Hannon's various creditors.  In January 2011, the United States removed the action to this Court, and Massachusetts disclaimed any interest in the judgment proceeds.  The United States and Manning both moved for summary judgment on the question of their relative lien priorities.  The parties agreed that the government's lien was senior to Manning's.  However, there remained the question whether the government's previously-executed Certificate of Discharge prevented it from recovering any further proceeds related to the property.

On October 24, 2011, I entered judgment in favor of Manning and ordered that the funds from the trial be distributed to Manning, with any remainder going to the United States as an unsecured creditor.  *Hannon* v. *City of Newton*, 820 F. Supp. 2d 254 (D. Mass. 2011), *rev'd*, 744 F.3d 759 (1st Cir. 2014).  After my original ruling, the United States timely filed a motion for reconsideration.

Meanwhile, Hannon filed a petition for Chapter 11 bankruptcy on May 3, 2012.  In his filing, he listed the judgment proceeds as a "possible interest" on his Schedule B of personal property assets.  Not having been advised of the pending bankruptcy proceeding and the automatic stay which

4

attended it, I denied the government's motion for
reconsideration on September 24, 2012.  *Hannon* v. *City of
Newton*, No. 11-10021-DPW, 2012 WL 4390527 (D. Mass. Sept. 24,
2012).

After my denial of this motion, the United States
successfully sought relief from the automatic stay in the
Bankruptcy Court in order to permit it to appeal my judgment in
the interpleader action and to collect the appropriate portion
of the interpleader fund.  On October 30, 2012, the Bankruptcy
Court granted the motion by bare endorsement without adopting
the form of order submitted by the United States.

The United States appealed my ruling on the interpleader
action to the First Circuit in November 2012.  Thereafter, in
December, Joseph Baldiga was appointed Chapter 11 Trustee in
Hannon's bankruptcy.  He moved to convert the bankruptcy from a
Chapter 11 reorganization bankruptcy to a Chapter 7 liquidation
bankruptcy.  The Bankruptcy Court approved the conversion in
January 2013.  In May 2013, while the interpleader appeal was
pending before the First Circuit, the Trustee moved to intervene
before me in this case, but I took no action on the motion
during the pendency of the appeal.  In February 2014, the First
Circuit reversed my determination regarding creditor priorities
and remanded the matter to this Court with instructions to enter

summary judgment in favor of the United States. *Hannon* v. *City of Newton*, 744 F.3d 759 (1st Cir. 2014).

The United States thereupon moved for entry of final judgment and distribution of funds, which the Trustee opposed as a potential intervenor. I granted both the Trustee's motion to intervene on remand and the United States' motion for entry of final judgment and distribution of funds. The allowance of these motions was designed to frame the issue for appellate review by permitting the United States to move for reconsideration of the Trustee's intervention, and permitting the Trustee to file a motion to stay entry of the judgment.

The Trustee and the United States did exactly that. The Trustee filed a motion to stay entry of final judgment in favor of the United States in this court and to direct distribution of the proceeds to the Trustee for distribution through the Bankruptcy Court. The United States filed a motion for reconsideration of my decision to allow the Trustee to intervene. I denied the United States' motion for reconsideration orally, and took the Trustee's motion for distribution under advisement. I have since received further submissions from the parties. This Memorandum and Order will address the final disposition of the funds in this proceeding.

## II. ANALYSIS

The United States advances several arguments as to why the

final distribution should be distributed directly to it without passing through the bankruptcy estate.

The first is that my October 24, 2011 grant of summary judgment to Ms. Manning was a final order for purposes of bankruptcy transfer avoidance.  The thrust of this argument is that the finality of the order should foreclose any other potential claim to the funds, including any claim by the Hannon bankruptcy estate.

The second argument is that, by not participating in the dispute over the interpleader funds between Manning and the United States, Hannon (and, now, his bankruptcy estate) implicitly abandoned any claim he may have had to the interpleader fund.

The third argument concerns an issue that was not originally briefed, but for which I requested additional briefing that is now before me.  This is whether in light of the Notice of Levy sent by the IRS to the City of Newton on May 19, 2010, the bankruptcy Trustee in the instant case is barred by the nine month statute of limitations from bringing a third-party wrongful levy challenge against the IRS.

Fourth, the United States argues that the conversion of Hannon's bankruptcy from a Chapter 11 proceeding to Chapter 7 is irrelevant.

7

And fifth, the United States argues that, regardless of the Trustee's rights with regard to avoidance of transfers, the October 30, 2012 grant of relief from the bankruptcy stay permitted the United States to pursue this case, and execute whatever final judgment resulted, regardless of any claim later put forward by the Trustee for Hannon's bankruptcy estate.

## A.    *Finality of Judgment and Entitlement to Funds*

On October 24, 2011, I held that Manning's lien was superior to that of the United States and that any and all funds remaining in the undercompensation interpleader fund should be paid to the United States after satisfaction of Manning's lien. *See Hannon*, 820 F. Supp. 2d at 261.  None of the funds in the interpleader fund were ordered to go to Hannon.  At that point, Hannon's bankruptcy estate did not yet exist because he did not file for bankruptcy until May 3, 2012.  After I issued this final judgment, the government filed a motion to reconsider under Federal Rule of Civil Procedure 59(e).  The government acknowledges that this motion suspended my final judgment in order to preserve the issues presented for appeal.  However, it argues that the decision was still final with regard to Hannon, because, regardless of the outcome of my reconsideration, or any potential appeal, Hannon would not have been entitled to any of the proceeds.

While the appeal of my decision was pending, Hannon filed for bankruptcy.  The Trustee now argues that, because the judgment was not final by the time Hannon filed for bankruptcy, Hannon (and, now, the Trustee as his successor), has a property right in the proceeds.  In advancing this contention, the Trustee defines a final decision in the bankruptcy context (i.e., a decision final enough to divest the estate of any potential property claim) as a final and *unappealable* decision. Under this definition, the judgment was not final when Hannon filed for bankruptcy.  This is because, in accordance with First Circuit precedent, timely motions under Rule 59(e) "suspend the finality of the original judgment, and the time for appeal from both that judgment and denial of the motions runs from the entry of the order denying the motions."  *Fiore* v. *Wash. Cty. Cmty. Mental Health Ctr.*, 960 F.2d 229, 234 (1st Cir. 1992); *see also Ofori* v. *Ruby Tuesday, Inc.*, 205 F. App'x 851, 852 (1st Cir. 2002) (per curiam) (unpublished opinion) (a Rule 59(e) motion suspends time for appealing the underlying summary judgment decision); *Tempelman* v. *U.S. Postal Serv.*, 981 F.2d 1245 n.2 (1st Cir. 1992) (per curiam) (unpublished opinion) ("Unlike a Rule 59(e) motion, a Rule 60(b) motion does not toll the time for appeal or affect the finality of the underlying judgment.").

The United States contends, however, that finality for purposes of appeal is not the relevant standard here and,

instead, urges application of the finality standards deployed in *res judicata* analysis (in situations in which it is applied to the same case, as opposed to use for collateral estoppel purposes).

I must first observe that, contrary to the United States' contentions, Rule 59(e) does not simply affect finality as to appeal.  *See generally Fiore*, 960 F.2d at 234 ("finality of the original judgment, *and* the time for appeal.") (emphasis added).

Theoretically, even though Hannon did not pursue his claim in this Court or in the appeal to the First Circuit, once the United States filed its Rule 59(e) motion, I could have found, upon reconsideration, that at least some of the money should have gone to Hannon.  Given the relevant Massachusetts law governing the priority of distribution from the proceeds of the undercompensation payment, this would have been unlikely. However, Hannon was still an interested party with a claim (however remote or unlikely) to the funds in a non-final case when he filed for bankruptcy.  And, at least superficially, Hannon has an argument that the proceeds should be considered part of his bankruptcy estate.

The capacious definition of "property" belonging to bankruptcy estates is evidence that "Congress intended a broad range of property to be included in the [bankruptcy] estate." *United States* v. *Whiting Pools, Inc.*, 462 U.S. 198, 204 (1983).

Such property is defined as "property, wherever located and by whomever held," and includes "all legal or equitable interest of the debtor in property as of the commencement of the [bankruptcy] case."  11 U.S.C. § 541(a).  This definition even includes property "in which the debtor did not have a possessory interest at the time the bankruptcy proceedings commenced." *Whiting Pools*, 462 U.S. at 205.

With regard to my previous decision from October 24, 2011, and its subsequent reversal, the only settled matter is that the United States did not relinquish its priority in extinguishing its lien on the underlying real property.  The First Circuit has directed me to enter summary judgment solely to the effect that the United States has priority over Manning with respect to the proceeds.  Were they still the only interested parties, the answer would be clear.  But the question whether the proceeds should be brought into the bankruptcy estate was not presented to me in the proceeding before the appeal.  Consequently, I approach this issue without giving any kind of preclusive effect in this case to the First Circuit's order except as to priority between Manning and the United States.

With this in mind, I find that the order was not final with respect to any contention that Hannon or his estate still had a claim to it.  From this finding, it is a natural conclusion to say that Hannon's estate had a "legal interest" in the property

11

(the interpleader fund) in this case, and that, as a result, the Trustee (on behalf of Hannon) has a cognizable claim that the funds belong in the bankruptcy estate.   However, simply because Hannon's estate does indeed have a claim to the funds does not necessarily mean that that claim is dispositive.   The United States has advanced several other reasons that the funds should still be awarded to the government outside of the bankruptcy proceedings, even assuming that Bankruptcy Code § 541 brings the property into the estate.

## B.   *Abandonment or Waiver*

The United States contends that Hannon's conduct during the interpleader action abandoned or waived his and, by extension, his bankruptcy estate's, claim to the proceeds.   Analysis of this question must be broken down into two parts: the first is whether Hannon's claim or interest in the funds could have been abandoned by his non-participation in later proceedings, and, the second is whether his filing for bankruptcy had any effect on his interest in the proceeds.

The logic of the United States' position is that, if Hannon's non-participation in these proceedings effectively abandoned his claim to the interpleader funds, he had no interest in or claim to the money to justify incorporating it into his bankruptcy estate.   It is undisputed that Hannon did not participate in the interpleader action, presumably because

he realized that, under the relevant Massachusetts law, the
claims of the creditors were so great as entirely to preclude
any recovery for him from the undercompensation funds.  *See*
Mass. Gen. Laws ch. 79, §§ 32-33; *Collector of Taxes of Boston*
v. *Revere Bldg.*, 177 N.E. 577, 577 (Mass. 1931) ("[W]hen
property subject to a mortgage is taken by eminent domain the
mortgagee may become a party to proceedings to assess
compensation therefor[e] and that a separate judgment is to be
entered for such mortgagee for the satisfaction of his mortgage
debt.").  The tax lien of the United States alone (not even
including Manning) is more than $7 million.  So it was
reasonable for Hannon (or his attorneys) to have thought that
his participation in the action concerning distribution of the
undercompensation proceeds would likely not yield any money for
Hannon's direct benefit.  The United States contends that,
because Hannon had almost no hope of actually obtaining
undercompensation funds himself, and did not participate in the
proceedings to determine the disbursement thereof, that he
therefore surrendered his claim to the funds, permitting me to
decide to which of his creditors the funds should be paid.

    The Trustee's position on this issue is that, even though
Hannon's chances of receiving the undercompensation proceeds
were almost nonexistent, and the funds were in a court account,
such proceeds were technically his property until such time as

one of the creditors was finally and indisputably awarded the funds.  The argument is that, because the funds were still disputed at the time Hannon filed for bankruptcy, he technically had possession of the funds at the time he filed.  I find this argument compelling.  As discussed above, the judgment with regard to ultimate disbursement of the funds had still not been resolved at the time Hannon filed for bankruptcy.  This fact, combined with the broad definition of what constitutes property of the estate under § 541 of the Bankruptcy Code, compels me to find that the proceeds became part of the estate when Hannon filed for bankruptcy.

The United States argues that, even if the proceeds were technically part of the estate when Hannon filed, Hannon abandoned the claim as part of his bankruptcy estate under the meaning of 11 U.S.C. § 554.  This argument is unpersuasive.

Section 554(a) provides that "[a]fter notice and a hearing, [the trustee] may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."  11 U.S.C. § 554(a).  Section 554(b) allows interested parties to request the court to order the Trustee to do so.  *Id.* § 554(b).  And Section (d) states that "[u]nless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate."  *Id.* §

14

554(d).  Abandonment under § 554 as argued by the United States
thus requires notice and a hearing, and either voluntary
relinquishment on the part of the Trustee or the same ordered by
the Bankruptcy Court.  I am unaware of any such action on the
part of either the Trustee or the Bankruptcy Court.
Consequently, the contention that Hannon's estate abandoned its
claim to the interpleader funds under § 554 fails.

**C.  *IRS Levy and Turnover Request***

In the first round of briefing, neither party made note of
the May 19, 2010 Notice of Levy issued to the City of Newton by
the IRS with respect to the original parcel of property, and any
attendant rights related to it.  The question is whether the
Trustee's current challenge to the funds in question constitutes
a wrongful levy challenge under the meaning of Internal Revenue
Code § 7426(a)(1).  Because this issue has proved dispositive in
other proceedings related to this case, I requested that the
parties submit further briefing on this issue.  In this round of
briefing, the United States contends that, although Hannon
himself would have the right to challenge the levy under the
statute, Hannon's bankruptcy estate Trustee is a separate party
because he is working predominately for the benefit of Hannon's
creditors, not Hannon himself.

Section 7426(a)(1) of the Internal Revenue Code states:

> (1) Wrongful levy.--If a levy has been made on
> property or property has been sold pursuant to a levy,
> any person (other than the person against whom is
> assessed the tax out of which such levy arose) who
> claims an interest in or lien on such property and
> that such property was wrongfully levied upon may
> bring a civil action against the United States in a
> district court of the United States. Such action may
> be brought without regard to whether such property has
> been surrendered to or sold by the Secretary.

26 U.S.C. § 7426(a)(1). Essentially, this section provides that "[w]hen someone other than the taxpayer claims an interest in property or rights to property which the United States has levied upon, his exclusive remedy against the United States is a wrongful levy action under I.R.C. s 7426." *United Sand & Gravel Contractors, Inc*. v. *United States*, 624 F.2d 733, 739 (5th Cir. 1980).

There are, however, restrictions on a third party's right to bring a wrongful levy action. The most relevant is that found in 26 U.S.C. § 6532(c)(1), which at the times relevant to this matter,[1] provided that "no suit or proceeding under section 7426 shall be begun after the expiration of 9 months from the date of the levy or agreement giving rise to such action." This provision created a nine month statute of limitations for third parties to bring wrongful levy claims against the government.

---

[1] Effective as of December 21, 2017, the statute of limitations changed from 9 months to 2 years. *See* 26 U.S.C. § 6532(c)(1). This change has no bearing on my analysis, however, as reflected in the further discussion contained in this Section of this Memorandum and Order.

16

It is this provision of the Code that compelled me to dismiss the claim of another of Hannon's creditors, Julie Foshay, who challenged the government's claim to the proceeds in what was essentially a wrongful levy claim. *See Hannon*, 2012 WL 4390527, at *9.

But this limitations period does not apply to the taxpayer himself, as stated explicitly in § 7426 itself.  The statute contains a carveout for "the person against whom is assessed the tax out of which such levy arose," Internal Revenue Code § 7426(a)(1), for whom the normal course of action of bringing "a refund suit in district court or a petition to the Tax Court for a redetermination of the deficiency" remains available. *Shannon* v. *United States*, 521 F.2d 56, 60 (9th Cir. 1975).  The government argues that the Trustee should be deemed a third party like Foshay whose claim would likewise be time-barred. However, in bankruptcy, "[w]hen a trustee is appointed, the trustee 'steps into the shoes of the debtor for the purposes of asserting or maintaining the debtor's causes of actions[].'" *DiMaio Family Pizza & Luncheonette, Inc.* v. *Charter Oak Fire Ins. Co.*, 448 F.3d 460, 463 (1st Cir. 2006) (quoting *In re Rare Coin Galleries, Inc.*, 862 F.2d 896, 901 (1st Cir. 1988)). Applying this foundational principle of bankruptcy law, it is clear that the Trustee's maintenance of Hannon's interest in or claim to the interpleader fund mirrors whatever interest in or

claim to the fund Hannon had before he filed for bankruptcy.  As a result, application of § 7426 is inappropriate, and the Trustee's claim is not barred by it.

**D.**    ***The Relevance of Conversion from Chapter 11 to Chapter 7***

In a Chapter 7 liquidation case, the Trustee is bound by the mandatory distribution scheme found in 11 U.S.C. §§ 724 and 726.  *See* 11 U.S.C. § 724 ("Property in which the estate has an interest and that is subject to a lien that is not avoidable under this title . . . shall be distributed . . .").  The parties argue over the meaning of the conversion of the bankruptcy estate from Chapter 11 bankruptcy to Chapter 7 bankruptcy and whether Chapter 7's mandatory distribution scheme is applicable to the interpleader funds.  For his part, the Trustee contends that the conversion to Chapter 7 bankruptcy means that the distribution of the interpleader funds must go through the Trustee himself in accordance with the Bankruptcy Code.

The response from the United States is two-fold.  The United States argues first that the proceeds at issue here are not part of the bankruptcy estate, and therefore the Bankruptcy Code statutes are not applicable.  I have rejected that argument.  *See supra* Section II.B.  The United States also contends that the statutes are inapplicable because of the

18

timing of the grant of relief from automatic stay and the conversion to Chapter 7 bankruptcy.

The timing argument in the United States' briefing is based on case law standing for the general proposition that the determination of rights in an interpleader fund is based on the rights of the claimant at the time the action was initiated. *See Texaco, Inc.* v. *Ponsoldt*, 118 F.3d 1367, 1370 (9th Cir. 1997); *White* v. *F.D.I.C.*, 19 F.3d 249, 252 (5th Cir. 1994); *Avant Petroleum, Inc.* v. *Banque Paribas*, 853 F.2d 140, 143 (2d Cir. 1988).  But that proposition does not speak directly to the question here, which is not about who has superior rights in the fund — a matter already determined by the First Circuit.

The Trustee does not dispute that the United States would be entitled to payment of the proceeds "but for" the conversion to Chapter 7.  Nor does the United States dispute that the penalty portions of the tax liens can be avoided as to property of the bankruptcy estate.  Therefore, the only issue regarding the conversion is whether the Bankruptcy Court's decision to lift the automatic stay somehow waived the necessity of complying with the relevant portions of the Bankruptcy Code such that I may directly exercise the authority to distribute the funds.

As a consequence, I must consider the Bankruptcy Court's intent in allowing the conversion of Hannon's bankruptcy from

Chapter 11 to Chapter 7 and lifting the automatic stay.  The
very fact that debtors may convert from Chapter 11 to Chapter 7
bankruptcy seems to me to support the fact that once the
conversion to Chapter 7 takes place, its statutory scheme,
including with regard to distribution, should govern.
Conversion to Chapter 7 means that the Trustee has the better of
the argument, and distribution should in the ordinary course go
through the Bankruptcy Court according to bankruptcy procedures.

More ambiguous, perhaps, is the fact that the Bankruptcy
Court lifted the automatic stay, but it did not use the United
States' proposed language in issuing its order before it then
went on to allow the conversion from Chapter 11 to Chapter 7
bankruptcy.  Nevertheless, taken together, the actions by the
Bankruptcy Court seem[2] to have indicated that it was for me and
ultimately the First Circuit to determine priority of rights,
but that distribution should still follow the procedure set out
in Chapter 7.

## E.    *Lifting of the Automatic Stay*

Were there no further issues to analyze, my determination
would be that, due to the all-encompassing nature of § 541 of
the Bankruptcy Code, the interpleader fund would be part of

---

[2] I note that Judge Hillman, who granted the motion to lift the
stay, has since retired and consequently a reference for
clarification by the Bankruptcy Judge who acted on the motion is
not an option.

Hannon's bankruptcy estate.   However, there remains the issue of ambiguity to the Bankruptcy Court's grant of relief from the automatic stay in Hannon's bankruptcy case.

The practical basis upon which the Trustee has the power to influence resolution of a case, such as this, outside of the Bankruptcy Court, is operation of the automatic stay.   The automatic stay found in 11 U.S.C. § 362(a) applies to the commencement of a bankruptcy case.   At the time the case is filed, the stay operates to halt "the commencement or continuation . . . of a judicial . . . proceeding against the debtor that was or could have been commenced before the commencement of the [bankruptcy] case . . . or to recover a claim against the debtor that arose before the commencement of the [bankruptcy] case . . . [or] any act to obtain possession of property of the estate . . . [or] any act to . . . enforce any lien against property of the estate."   11 U.S.C. § 362(a).

This automatic stay is a "familiar bedrock of bankruptcy law," giving a debtor "breathing room" from his creditors. *Soto-Rios* v. *Banco Popular de P.R.*, 662 F.3d 112, 116 (1st Cir. 2011).   "It is designed to effect an immediate freeze of the *status quo* by precluding and nullifying post-petition actions, judicial or nonjudicial, in nonbankruptcy fora against the debtor or affecting the property of the estate." *Hillis Motors, Inc.* v. *Haw. Auto. Dealers' Ass'n*, 997 F.2d 581, 585 (9th Cir.

1993) (citing *Interstate Commerce Comm'n* v. *Holmes Transp.,*

*Inc.*, 931 F.2d 984, 987 (1st Cir. 1991)).

But there is some flexibility to work around this automatic

action.  Section 362(d)(2) provides that,

> On request of a party in interest and after notice and
> a hearing, the court shall grant relief from the stay
> provided under subsection (a) of this section, such as
> by terminating, annulling, modifying, or conditioning
> such stay . . . with respect to a stay of an act
> against property under subsection (a) of this section
> . . .

11 U.S.C. § 362(d)(2).

The purpose of Section 362's automatic stay is

> to protect the debtor from an uncontrollable scramble
> for its assets in a number of uncoordinated
> proceedings in different courts, to preclude one
> creditor from pursuing a remedy to the disadvantage of
> other creditors, and to provide the debtor . . . with
> a reasonable respite from protracted litigation,
> during which they may have an opportunity to formulate
> a plan of reorganization for the debtor.

*A.H. Robins Co., Inc.* v. *Piccinin*, 788 F.2d 994, 998 (4th Cir.

1986) (citing *Matter of Holtkamp*, 669 F.2d 505, 508 (7th Cir.

1982)).  This allows the debtor to take some time to understand

the extent of his property in order to effectuate an efficient

reorganization or (in the case of Chapter 7) liquidation.

Section 362(d) allows the Bankruptcy Court to lift the stay as

to certain outside proceedings if the court determines that the

estate would best be served by allowing those proceedings to

continue outside of bankruptcy.  "When a bankruptcy court lifts,

or modifies, the automatic stay, it merely removes or modifies the injunction prohibiting collection actions against the debtor or the debtor's property . . . 'Relief from an automatic stay entitles the creditor to realize its security interest . . . [or other interest] in the property . . .'" *Catalano* v. *C.I.R.*, 279 F.3d 682, 686 (9th Cir. 2002) (quoting *Nebel* v. *Richardson (In re Nebel)*, 175 B.R. 306, 312 (Bankr. Neb. 1994)).

Unaware of Hannon's bankruptcy case, on September 24, 2012, I issued an order denying the United States' timely motion for reconsideration of the order granting summary judgment to Manning as to the priority of the respective parties' claims to the interpleader funds.  This order technically violated the automatic stay.  In order to preserve the validity of my September 24 order so as to provide a procedurally correct appeal, and in an attempt fully to resolve the issue of the interpleader funds outside of the Bankruptcy Court with the Bankruptcy Court's blessing, the United States filed a motion in the Bankruptcy Court pursuant to § 362(d) to lift the automatic stay as applied to the interpleader funds.  This motion requested that the Bankruptcy Court "permit the United States to appeal the District Court's adverse judgment in the Interpleader Action and to collect an appropriate portion of the Interpleader Fund, or, alternatively, an Order declaring that the automatic stay does not apply."  Rather than adopting the proposed order

Judge Hillman endorsed the motion as "Granted" without further
explanation.  *See* No. 12-bk-13862, Dkt. No. 164 (Bankr. Mass.
Oct. 30, 2012).

This ruling cannot, without speculation, be read to mean
that Judge Hillman effectively adopted the proposed order of the
United States submitted with the motion to annul the stay.  That
proposed order reads:

> The Creditor United States' Motion to Annul the
> Automatic Stay to Allow Continued Proceedings in
> Pending Interpleader Action is GRANTED.
> The automatic stay is hereby annulled for the
> purpose of allowing the continuation of the
> proceedings in *Patrick J. Hannon* v. *City of Newton et
> al.*, Case No. 1:11-cv-10021, U.S. District Court,
> District of Massachusetts, including a possible appeal
> by the United States of the District Court's judgment
> *and distribution of funds in accordance with any final
> judgment entered by the District Court.*

Proposed Order to Annul the Automatic Stay, No. 12-bk-13862,
Dkt. No. 131, Ex. 13 (Bankr. Mass. Oct. 3, 2012) (emphasis
added).  The proposed order was quite broadly phrased and it
encompassed all of the eventualities that have come to pass.
The language of the proposed order purports to include any
potential final judgment this court would issue in the instant
case, and to lift the stay as to any final disbursement of the
interpleader funds.  But, of course, Judge Hillman did not adopt
this proposed order.

The interpleader fund would normally be considered property
of the estate under the broad definition of § 541.  And, if it

24

were brought into bankruptcy proceedings and made property of the estate, the distribution scheme required under §§ 724 and 726 of the Bankruptcy Code would be applicable, as urged by the Trustee.  Despite the possibility that the bare endorsement granting annulment of the stay might be read to permit me to maintain control over the interpleader funds to be distributed as mandated by the First Circuit, I decline to embrace that reading.  Under the circumstances, the more prudent course is to leave the question of distribution in the first instance to the bankruptcy court where the United States may pursue its claim over the funds in question to the conclusion of relevant proceedings.

### III. CONCLUSION

For the reasons stated above, I hereby ALLOW the Trustee's Motion (#72) and hereby order that the interpleader fund be distributed to the Trustee as property of the Hannon estate in the Chapter 7 proceedings now approaching conclusion in the Bankruptcy Court.  The Clerk is directed upon final judgment directing this distribution of the interpleader fund to close this case in this court.


*/s/ Douglas P. Woodlock*_____
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE